**JAMES HARE, JR.,**
**Plaintiff,**

v.

**UNITED REFINING COMPANY.**

**Defendant.**

Civil Action No. 17-33

**ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS**

## I.     INTRODUCTION

This matter comes before the Court on Defendant United Refining Company's Motion to Dismiss Plaintiff James Hare, Jr.'s Second Amended Complaint. Having reviewed the Second Amended Complaint and the pleadings in support of and opposition to this motion, the Court finds and rules as follows:

## II.     DISCUSSION

A.  <u>Factual Allegations</u>

The factual allegations in Plaintiff's Second Amended Complaint are materially the same as the allegations in his original complaint, which this Court dismissed with leave to amend.[1] Again, Plaintiff claims he was wrongfully terminated for reporting internally to supervisors that his employer, Defendant United Refining Company ("United"), was violating certain safety and environmental regulations. Plaintiff began working at United as a "Tank Farm Terminal Manager/PA Field Supervisor" in 2013. He alleges that starting in October 2016, his supervisor at United directed him to "override the safety" on an automated dike drain valve, "and allow the

---

[1] In his Second Amended Complaint, Plaintiff omitted allegations relating to his employer's alleged overpayment of a snowplowing contractor.

drains to be opened without personnel on site," which Plaintiff claims was a violation of "DOT regulations." Sec. Amend. Compl. ¶ 8. Hare claims he also noticed that a tank had been leaking diesel fuel onto the ground. *Id.* Hare alleges he reported the issues to superiors, but nothing was done. *Id.* Hare claims that in December 2016, he noted that the Operations Department was "running the tanks past the high-level alarms," and that cranes being operated inside the facility tipped over and "almost killed three people." *Id.* ¶9. Hare claims to have made reports to supervisors concerning the improper operation of the tanks and pipelines, overflows of contaminated diesel onto public property, and the overriding of other safety mechanisms at the site. *Id.* ¶ 10. Hare claims the supervisor to whom he made these reports dismissed his concerns, and sent him, Hare, an email stating "I knows [sic] this is against policy but I am the boss and telling you to do so." *Id.* Hare claims that in retaliation, starting in October 2016, his supervisor started making reports to "HR at least 3-4 days a week" to complain about Hare. On January 5, 2017, Hare was terminated due to "recent conduct," though he claims just days before he had examined his HR file and it did not contain any complaints. *Id.* ¶ 13&14.

B. Standard of Review

As the Court stated in its Order granting Defendant's first motion to dismiss, to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. When considering a motion to dismiss, the court must "accept all factual allegations as true," and the complaint must be construed "in the light most favorable to the plaintiff." *In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 311 F.3d 198, 205–06 (3d Cir. 2002) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997)).

C. Pennsylvania Public Policy Exception to At-Will Employment

This Motion to Dismiss raises the same issues as Defendant's first Motion to Dismiss Plaintiff's original Complaint. Specifically, Defendant argues that it is undisputed that Hare was an at-will employee, and that under Pennsylvania law, an at-will employee may be terminated for any reason, or for no reason at all. *See McLaughlin, v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283, 287 (Pa. 2000). This rule allows for only narrow exceptions, under which a plaintiff must demonstrate that his termination was in violation of Pennsylvania public policy. *Id.* Pennsylvania courts have recognized several specific circumstances under which a termination may violate public policy, but Hare admits only one may apply to his case: if the public policy "is so obviously for or against public health, safety, morals, or welfare that there is a virtual unanimity of opinion in regard to it." *Mikhail v. Pa. Org. for Women in Early Recovery*, 63 A.3d 313, 316-17 (Pa. Super. Ct. 2013) (*quoting Weaver v. Harpster*, 975 A.2d 555, 563 (Pa. 2009)). The public policy supporting an exception to the at-will employment rule must be that of the Commonwealth of Pennsylvania, ascertained from its laws and legal precedents and not from "supposed public interest." *McLaughlin* at 288, 290 (termination of employee in violation of federal Occupational Safety and Health Act did not implicate Pennsylvania public policy).

The Court dismissed Plaintiff's original Complaint because although it alleged violations of various federal environmental regulations, it failed to articulate which *Pennsylvania* public policy his termination may have implicated. *See* Memorandum Opinion Granting Defendants' Motion to dismiss at 5-6, *citing McLaughlin*, 750 A.2d at 289. In an attempt to correct this defect, Plaintiff's Second Amended Complaint makes "citations to numerous Pennsylvania laws and regulations." Pl. Resp. at 8-9. Plaintiff argues "with his reference to numerous statutes and regulations within this Commonwealth, the Plaintiff has implicated the public policy of this

Commonwealth." *Id.* But mere "citation" to Pennsylvania laws, without any specific facts supporting the allegation that Defendant has violated those laws, is utterly insufficient. *See Hunger v. Grand Central Sanitation*, 670 A.2d 173 (Pa. Super. 1996) ("the stated mandate of public policy, as articulated in the constitution, statute, or judicial decision, must be applicable directly to the employee and the employee's actions."). Plaintiff's Second Amended Complaint fails to articulate any of the elements of the regulations he claims his employer was violating, or any facts demonstrating those elements were present in these circumstances. It therefore fails the threshold test of *Iqbal* and *Twombly*. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678 (Fed. R. Civ. P. 12(b)(6) "requires more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action").

Even taking Plaintiff's factual allegations as true, the Court is unable to ascertain which laws Plaintiff is claiming Defendant is actually accused of violating, and in what way. Indeed, Defendant claims that on their face, none of these laws even apply to Defendant, an assertion Plaintiff does not, with the support of any factual allegations, deny. *See, e.g.*, 25 Pa. Code § 78a.68 (regulating employees engaged in drilling for production of natural gas, which Plaintiff admits "is not directly applicable." Pl. Resp. at 10). In fact, Plaintiff admits that he "has researched vigorously and has not returned with any Pennsylvania statute directly on point." Pl. Resp. at 9. It is not the province of this Court, as Plaintiff argues, to "discern" the public policy of Pennsylvania from a litany of inapplicable regulations. For the public policy exception to at-will termination to apply, the circumstances must "implicate[] a *clear mandate* of public policy." *McLaughlin*, 750 A.2d at 287 (emphasis added). Where Pennsylvania lawmakers have declined to articulate a clear public policy, courts interpreting Pennsylvania law have routinely refused to find a general common law prohibition against the discharge of private sector employees who act

in the "public interest" by, for instance, exposing unsafe working conditions and publicizing manufacturing defects in their employer's products. *See, e.g., Holewinski v. Children's Hosp.*, 649 A.2d 712 (1994); *Krajsa v. Keypunch, Inc.,* 622 A.2d 355 (1993); *Cohen v. Salick Health Care, Inc.*, 772 F. Supp. 1521 (E.D.Pa.1991).

In the admitted absence of such "clear mandate" in this case, the Court declines Plaintiff's invitation to "discern" a public policy violation. *Cf. Donaldson v. Informatica Corp.*, 792 F. Supp. 2d 850, 861 (W.D. Pa. 2011)("In light of the extreme narrowness of the public policy exception to at-will employment in Pennsylvania, and in the absence of authority from the Pennsylvania Supreme or Superior Courts supporting [Plaintiff's] position, I cannot predict that the Pennsylvania Supreme Court would extend the public policy exception to employment at-will to this case."); *see also Krajsa*, 622 A.2d at 359 ("Courts are precluded from undertaking the task of creating and forming public policy with respect to wrongful discharge on [their] own initiative.").

Finally, even if Plaintiff had sufficiently alleged that Defendant had somehow acted in violation of Pennsylvania law, "a firing which resulted solely due to an employee's decision to report his employer's illegal activities is not actionable. The firing must be specifically prohibited by statute." *Hunger v. Grand Cent. Sanitation*, 670 A.2d 173, 176 (1996). As stated above, Plaintiff has been unable to identify any such statute.

In short, Plaintiff's Second Amended Complaint fails on the same deficiencies as his original Complaint. This is Plaintiff's third failed attempt at articulating a claim on which relief can be granted. The motion to dismiss is granted. Plaintiff's Second Amended Complaint is hereby dismissed with prejudice.

Dated this 25th day of April, 2018.


Barbara Jacobs Rothstein
U.S. District Court Judge